UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IN RE:
ENVIRONMENTAL TECHNOLOGIES
INTERNATIONAL, INC.,

        Debtor.
_____/

MATTHEW J. FREESE,

        Appellant,

v.                     Case No. 8:17-cv-74-T-33
                            Bankr. No. 8:15-bk-6910-KRM
                            Adversary No. 8:15-ap-786-KRM

ASA W. CANDLER, III, et al.,

        Appellees.
_____/

**ORDER**

This matter comes before the Court upon consideration of Appellant Matthew J. Freese's Motion for Rehearing (Doc. # 17), filed on June 27, 2017. The Court invited Appellees Asa W. Candler, III, and Steve Ostermann to file a response by July 11, 2017, if they wished to be heard on the Motion. (Doc. # 18). Appellees timely filed a response in opposition. (Doc. # 19). For the reasons below, the Motion is denied.

**I.**   **Background**

A detailed recitation of facts is not needed for the disposition of the instant Motion. Suffice it to say that

Freese appealed the entry of final judgment in favor of Candler and Ostermann by the bankruptcy court. After being fully briefed, this Court affirmed. Freese now moves for rehearing.

**II.  <u>Standard</u>**

The pending Motion is brought pursuant to Federal Rule of Bankruptcy Procedure 8022. (Doc. # 17). Rule 8022 provides that "any motion for hearing by the district court . . . must be filed within 14 days after entry of judgment on appeal." Fed. R. Bankr. P. 8022(a)(1). In addition, "[t]he motion must state with particularity each point of law or fact that the movant believes the district court . . . has overlooked or misapprehended and must argue in support of the motion." Fed. R. Bankr. P. 8022(a)(2).

"Bankruptcy Rule 8022 (formerly 8015) is silent regarding the standard for granting a rehearing motion. Courts in the Eleventh Circuit have 'applied the same standard to motions for rehearing under Bankruptcy Rule 8015 as is applied to motions for reconsideration under Federal Rule of Civil Procedure 59(e).'" <u>Tucker v. Mukamal</u>, No. 13-mc-23425-MARRA, 2015 WL 10986356, at *1 (S.D. Fla. Feb. 11, 2015) (quoting <u>In re Daniels</u>, No. 12-CV-4181-WSD, 2014 WL 547176, at *3 (N.D. Ga. Feb. 10, 2014)); <u>see also</u> <u>In re Steffen</u>, 405

B.R. 486, 488 (M.D. Fla. 2009) ("The District Court for the Middle District of Florida has previously applied the same standard to motions for rehearing under Bankruptcy Rule [8022] as is applied to motions for reconsideration under Federal Rule of Civil Procedure 59(e) or 60(b).") (citation omitted).

"The only grounds for granting a Rule 59 motion are newly-discovered evidence or manifest errors of law or fact." Anderson v. Fla. Dep't of Envtl. Prot., 567 Fed. Appx. 679, 680 (11th Cir. 2014) (quoting Arthur v. King, 500 F.3d 1335, 1343 (11th Cir. 2007)) (quotation marks omitted). Granting relief under Rule 59(e) is "an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." United States v. DeRochemont, No. 8:10-cr-287-T-24MAP, 2012 WL 13510, at *2 (M.D. Fla. Jan. 4, 2012) (citation omitted). Furthermore, "a Rule 59(e) motion [cannot be used] to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." Michael Linet, Inc. v. Vill. of Wellington, Fla., 408 F.3d 757, 763 (11th Cir. 2005).

### III. Analysis

The pending Motion for Rehearing merely rehashes arguments Freese previously put forward that the Court

rejected. For that reason, the Motion is denied. Id. The Court will, however, address the crux of the argument advanced by Freese: ETI's failure to pay him a salary vitiated his obligations under paragraph 9 of the employment agreement.

The employment agreement entered into between Freese and ETI laid out the terms of Freese's compensation (Doc. # 2-10 at ¶ 3), which was amended by the letter agreement (Doc. # 2-9 at ¶ 6(a)(ii)). The employment agreement further stated:

> 9. **Inventions**. Freese hereby sells, transfers, and assigns to [ETI], all of the right, title, and interest of Freese in and to all inventions, ideas, disclosures, and improvements . . . made or conceived by Freese, solely or jointly, or in whole or in part, during the term hereof which:
>
> (a) relate to methods, apparatus, designs, products, processes, or devices sold, leased, used, or under construction or development by [ETI] . . . .; or
>
> (b) otherwise relate to or pertain to the business, functions, or operations of [ETI] . . .; or
>
> (c) arise in whole or in part from the efforts of Freese during the term hereof.
>
> Freese shall communicate promptly and disclose to [ETI] . . . all information . . . pertaining to the aforementioned inventions, ideas, disclosures, and improvements; and . . . Freese shall execute and deliver to [ETI] such formal transfers and assignments and such other papers and documents as may be required of him to permit [ETI] . . . to file and prosecute the patent applications . . . . Any invention by Freese related to the technology of the Corporation within five years following the

4

termination of this Agreement shall be deemed to
fall within the provisions of this section unless
proved by Freese to have been first conceived and
made following such termination.

(Doc. # 2-10 at ¶ 9).

The employment agreement also provided that "a waiver by
the Corporation or Freese of a breach of any provision of
this Agreement by the other party shall not operate or be
construed as a waiver of any subsequent breach by the other
party." (Id. at ¶ 15). And while the actual cause of action
in the underlying adversary proceeding was governed by
Florida law (Doc. # 15 at 21), the employment agreement is
"construed in accordance with the laws of the State of North
Carolina without giving effect to the conflicts of law
provisions thereof."

In his Motion for Rehearing, Freese argues:

Candler and Ostermann caused ETI to be in material
breach of the [employment agreement] month-by-month
as Freese's salary became due, was invoiced, and
Candler and Ostermann refused payment right up
until the time that Freese was terminated in
October 2012 for his asserted breach of the
[employment agreement]. Candler and Ostermann
failed to comply with a Board of Directors
directive . . . long before and right up until the
time they voted as ESI Directors to terminate
Freese for breach of the very same agreement. By
the plain and straightforward terms of the
[employment agreement], Freese did not waive the
material breach by ETI when he refused to sign the
Acknowledgment of Assignment. Freese was not
obligated to perform under or comply with the

> [employment agreement] because ETI was in prior
> material breach of the agreement at the time ETI
> demanded his performance.

(Doc. # 17 at 8). Freese's argument is unpersuasive.

Under paragraph 15 of the employment agreement, a party's waiving one breach does not waive a second breach. So, while Freese's observation that he "did not waive the material breach by ETI when he refused to sign the Acknowledgment of Assignment" is accurate in a sense, it does not advance the notion that Freese was relieved of his obligations under paragraph 9. The waiver resulted not from Freese's subsequent breach of the employment agreement, but rather from Freese's self-noted continued work for ETI despite ETI's putative breach of paragraph 3, see, e.g. (Doc. # 17 at 5) ("Despite their being in breach, Mr. Freese continued to work diligently.").

In addition, Freese's related argument — that he was relieved of all obligations under the employment agreement — is unsupported by North Carolina law. As stated by the court in Williams v. Habul,

> [t]he general rule governing bilateral contracts
> requires that if either party . . . commits a
> material breach of the contract, the other party
> should be excused from the obligation to perform
> further. . . . However, "[f]ailure to perform an
> independent promise does not excuse nonperformance
> on the part of the other party."

724 S.E. 2d 104, 112 (N.C. Ct. App. 2012) (citation omitted).
A bilateral contract, like the employment agreement at issue
here, contains "reciprocal promises, so that there is
something to be done or forborne on both sides," Winders v.
Kenan, 77 S.E. 687, 689 (N.C. 1913); see also Irwin v. Fed.
Express Corp., No. 1:14-cv-00557, 2016 WL 7053383, at *4
(M.D.N.C. Dec. 5, 2017) (noting that "bilateral contracts are
based upon mutual promises") (citation omitted).

Freese argues that ETI's failure to pay him excused him
from complying with his obligations under paragraph 9. The
question is then: are paragraphs 3 and 9 independent or
dependent promises? To determine if covenants are dependent
or independent a court looks to "the intention of the parties
shown by the entire contract as construed in the light of the
circumstances of the case, the nature of the contract, the
relation of the parties thereto, and other evidence which is
admissible to aid the court in determining the intention of
the parties." Williams, 724 S.E. 2d at 112-13 (citation
omitted).

The court in Williams looked to the language of the two
clauses alleged to be dependent covenants. Id. at 113. After
examining the contractual language, the Williams court

7

concluded the covenants were independent because "[t]here [was] simply no nexus between the promises recited in Paragraph 5 and those recited in Paragraph 8 to permit construction of the promises . . . as mutually dependent." Id.

A fair reading of the paragraphs at issue in this case shows no connection between paragraphs 3 and 9 other than that the respective obligations imposed by those paragraphs occurred during the same time period. Otherwise, there is no language tying payment of salary to assignment of rights or vice versa. Indeed, paragraphs 3 and 9 never cross reference each other. And, while there is language tying payment of salary to "services rendered," which are further expounded upon in paragraphs 4 and 5, there is no cross reference between paragraphs 4 and 5 and paragraph 9.

Notably, paragraph 9 explicitly contemplates an assignment after the term of the employment agreement, which as defined in paragraph 2(c) could end as a result of a material breach by ETI. Thus, the employment agreement's plain language demonstrates paragraph 3 is independent of paragraph 9. Because paragraphs 3 and 9 are independent covenants, even a breach by ETI of paragraph 3 would not have excused Freese from complying with paragraph 9.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

Appellant Matthew J. Freese's Motion for Rehearing (Doc.

# 17) is **DENIED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this

21st day of July, 2017.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE